### No. 40,123

REXER BERNDT and GERALDINE C. BERNDT, his wife; CARRIE ANDER-SON; THOMAS G. MILBURN; ROY H. BROWN and RUBY M. BROWN, his wife; OSCAR HURLEY and NETTIE E. HURLEY, his wife; ANDREW B. MARTIN and MARJORIE E. MARTIN, his wife; MARIE OYER; and FRED H. McCUNE, *Appellants*, v. CITY OF OTTAWA, KANSAS; W. W. ROBE, as mayor; K. E. ANDREWS, as commissioner and IVAN BROWN, his successor in office as commissioner; and A. C. RICHE-SON, as commissioner; and L. I. CRATER, as city clerk; and DONALD R. CAPPER, his successor in office as city clerk; CITY OF OTTAWA, FRANKLIN COUNTY, KANSAS, *Appellees*.

(298 P. 2d 262)

Opinion filed June 9, 1956.

*Robert A. Anderson*, of Ottawa, argued the cause, and *Richard C. Byrd*, of Ottawa, was with him on the briefs for the appellants.

*Thomas E. Gleason*, of Ottawa, argued the cause, and *Douglas Gleason*, of Ottawa, was with him on the briefs for the appellees.

The opinion of the court was delievered by

WERTZ, J.: This was an action to enjoin the City of Ottawa from certifying to the county clerk of Franklin County for collection cer-

tain asessments made in connection with the paving of a street. The proceeding, so far as pertinent to the question involved in this action, may be stated as follows:

Pursuant to a petition signed by a majority of real property owners liable for taxation, the City of Ottawa passed an ordinance which authorized the paving of Cottonwood between Tenth and Eleventh streets. The street was paved and another ordinance was passed apportioning and levying a special assessment against the real estate to the middle of the block on either side of Cottonwood between Tenth and Eleventh. Subsequently, plaintiffs filed a petition in the district court of Franklin County protesting the tax, and asking to have the ordinance of the defendant City, apportioning and assessing the costs of paving, declared null and void so far as it affected their property, and to enjoin the city clerk from certifying the assessment to the county clerk. The cause was tried on an agreed statement of facts. At the close of the trial, defendants' motion for judgment on the pleadings and stipulation of the parties was sustained by the trial court, which entered judgment in favor of the City, and plaintiffs appeal.

The respective parties agree that there is only one question before this court. What is the meaning of the word "blocks" as used in the phrase "two or more adjacent blocks," contained in G. S. 1949, 12-602?

Before taking into consideration the contentions of the parties, we take note of the fact that in 1923 various statutes, providing for the paving of streets, were considered and revised. A revision of the general paving law appears in R. S. 1923, ch. 12, art. 6. Such amendments as have since been made to the above article do not affect the question here presented. G. S. 1949, 12-601 and 12-602, provide in pertinent part:

Section 12-601:

"Whenever any street or avenue in any city shall be graded, . . . paved, . . . or otherwise improved, the cost of such improvement shall be paid by and assessed to the property *on each side of said street or avenue to the middle of the block.*" (Our italics.)

Section 12-602:

". . . Whenever a majority of the resident owners of real property liable to taxation for the improvement in *two or more adjacent blocks* shall petition the governing body to . . . pave, . . . or otherwise improve the same, the governing body shall cause such work to be done or such improvement to be made, and shall contract therefor, and shall levy taxes for all such

improvements as herein provided upon the property *on each side of said street to the middle of the block* . . ." ( Our italics.)

It is conceded by plaintiffs that the word "block" as used in the expression "to the middle of the block" in section 12-602, or as the same is used in section 12-601, means a square of land surrounded by streets. However, plaintiffs contend that the word "blocks" used in the expression "two or more *adjacent* blocks" means a unit of length which is the distance between two intersecting streets. Plaintiffs cite as the only authorities sustaining their contention the cases of *Skolnick v. Orth,* 145 N. Y. S. 961, and *Chamberlain v. Roberts,* 81 Colo. 23, 253 Pac. 27. We have examined these authorities and find they are neither in point nor do they sustain plaintiffs' contention on the question presented under the facts in the instant case.

Appellees contend the word "blocks" means two or more rectangles or squares surrounded by streets.

No doubt it is quite true that almost any word in the English language is susceptible of more than one meaning or interpretation. Thus, if a word or phrase used in any given statute is ambiguous, this court must consided the intention of the body of individuals responsible for its passage in order to give the word, phrase or entire statute its true, intended meaning. The manifest intention of the legislature controls rather than the meticulous definition of words used. Courts apply to the words the definitions already made by common usage. The word "blocks," as defined by this court, is generally deemed to mean squares surrounded by streets. In the case of *Olsson v. City of Topeka,* 42 Kan. 709, 713, 21 Pac. 219, we said:

". . . The statute provides that words shall be construed according to the approved usages of the language, except technical words and those that have acquired a peculiar meaning, which shall be construed according to their peculiar meaning. ( Comp. Laws of 1885, ch. 104, §1. ) We have no hesitation in saying that the ordinary signification of a block in a city is understood to be a part of the city inclosed by streets. It is certain that a block has no such technical and peculiar meaning in Kansas, as contended for by plaintiffs; on the contrary, its ordinary signification has been approved and emphasized in this court. In the case of *City of Ottawa v. Barney,* supra [10 Kan. 270, 278], Judge Brewer, in rendering the opinion of the court, says: 'A block is defined by Webster as "a square or portion of a city inclosed by streets, whether occupied by buildings or composed of vacant lots." It is a portion of ground surrounded by streets.' We are well satisfied with the definition, and taking it as our guide in this decision, it follows as a matter of course that the word *square,* used by plaintiffs, is synonymous with *block,* and therefore these lots in

question lying on that part of the block nearer this avenue than to the street on the opposite side thereof, are subject to taxation for these improvements, without any reference whatever to where the alley runs through the block or square."

See, also, *Bowlus v. Iola,* 82 Kan. 774, 776, 109 Pac. 405. In *Wilson v. City of Topeka,* 168 Kan. 236, 212 P. 2d 218, we said:

"Ordinarily the word 'block' as used in G. S. 1935, 12-601 [G. S. 1949, 12-601], refers to a space in a city, usually rectangular, enclosed by streets and used or intended for buildings." (Syl. ¶ 1.)

See, also, *Sports Center, Inc., v. City of Wichita,* 176 Kan. 84, 88, 269 P. 2d 399.

Section 12-602 clearly states the phrase "two or more adjacent blocks." If the occasion arises, there may be more than two blocks involved but the bare minimum is two. Actually if the word "block" were interpreted to mean a unit of length, and the paving was for two or more blocks, then it would involve the bare minimum of four blocks. In other words, four actual blocks would be involved since they would be necessary to fulfill the requirements so far as taxation is concerned, inasmuch as the taxes for such street paving shall be levied on the property on each side of the street to the middle of the block. The legislature, without question, intended the phrase "two or more adjacent blocks" to mean two blocks across from each other with a street between. To follow plaintiffs' contention that it meant lineal blocks would require four blocks instead of the two enumerated by the statute.

Plaintiffs' contention that the word "block" as used in the expression "to the middle of the block" in section 12-602, or as the same is used in section 12-601, means a square of land surrounded by streets, but when the word "blocks" is used in the expression "two or more adjacent blocks" in the same section, means a unit of length which is a distance between two intersecting streets, is without merit. It is presumed that identical words used in different parts of the same statute are intended to have the same meaning throughout the act. (82 C. J. S. 553 and 691.)

It follows that the judgment of the trial court is affirmed.