RICHARD FEDERICO ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF TRUMBULL ET AL.
(2743)
(2751)

DUPONT, C. J., HULL and BORDEN, Js.

Argued October 4—decision released November 19, 1985

*Burton S. Yaffie,* for the appellant (named
defendant).

*Bruce L. Levin,* with whom, on the brief, was *Serge
G. Mihaly,* for the appellants (defendant Vincent San
Fillippo et al.).

*Frederick F. Ehrsam, Jr.,* for the appellees (plaintiffs).

HULL, J. In this zoning case, the defendant property owners, Vincent and Madeline San Fillippo, and the defendant planning and zoning commission of the town of Trumbull were granted certification to appeal the judgment of the trial court. That judgment sustained the plaintiffs' appeal from the commission's approval of a two lot subdivision of the owners' land located on the northeasterly side of Leonard Place at the intersection of Williams Road in Trumbull. The plaintiffs' own land abutting the property in question.

The underlying facts are not in dispute. The property consists of 1.66 acres zoned Residence A. The minimum area in such a zone is one-half acre. The owners' application proposed resubdivision[1] as illustrated in the appendix to this opinion. Using this creative resubdivision plan, the owners formed two lots, one fronting on a new street, Lynn Place (Lot 1),[2] and an additional lot (Lot 2) fronting on Lynn Place along a strip of land extending to Leonard Place. The commission approved the application and the plaintiffs appealed that approval.

In sustaining the appeal, the court concluded that the commission approved a plan of resubdivision which did

---

[1] The record uses the term subdivision; it appears that the San Fillippos sought a resubdivision. General Statutes § 8-18. We therefore use the term resubdivision.

[2] Although the trial court found both lots to be vacant, the parties agreed at argument that a residence has been built on Lot 1. We offer no opinion as to whether the tail section could properly be included as frontage for the extra Lot 2. This precise issue was not litigated or ruled on by the trial court. We take the case as the issues were framed by the parties. *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 40, 440 A.2d 801 (1981). The plaintiffs conceded at oral argument that they do not contest that Lynn Place is a street. To do so would vitiate their principal argument that the block requirement of the regulations was violated.

not conform either to the land subdivision regulations or to the zoning regulations of Trumbull. The court found that the layout of Lynn Place in the application is such that the block length between Lynn Place and Arrowhead Road is shorter than the 300 feet required by the land subdivision regulations.[3] The court also found that the proposed residential use of Lot 2 would violate front yard, rear yard and frontage requirements of the zoning regulations.

The defendants raise the following claims of error by the trial court: (1) Did the court err in sustaining the appeal on the grounds that the subdivision would create a "block" which would not satisfy the requirements for block dimension in the regulations, where no "block" as defined in *Westport* v. *Norwalk,* 167 Conn. 151, 355 A.2d 25 (1974), was in fact created? (2) Even if the defendants' application had created a new block, did the court err in sustaining the appeal for failure of the application to satisfy block dimensions, where the commission had discretion under its regulations to relax those requirements? (3) Did the court err in sustaining the appeal based on purported noncompliance with yard and frontage requirements, when such requirements relate only to the use of land (zoning) which is irrelevant and inapplicable in connection with subdivision approval (planning)? (4) Did the trial court misconstrue the regulations and commit mathematical error with respect to the defendants' compliance with yard and frontage requirements?

---

[3] Chapter V, § 8 (a), of the Trumbull land subdivision regulations provides: "Intersecting streets shall be laid out at such intervals that block lengths between street lines are not more than 1200 feet, nor less than 400 feet, except when existing conditions, in the opinion of the Commission, justify a variation from this requirement. Minimum widths of blocks shall generally be not less than 300 feet between street lines in residential areas. The long side of blocks shall face the main or more important thoroughfare to reduce the number of intersections thereon."

The defendants admit that the block length between Lynn Place and Arrowhead Road is less than 300 feet. They claim, however, that since no "block" was created by the approval of their application, the 300 foot requirement between intersections is irrelevant. We agree.

The court's conclusion is inconsistent with *Westport* v. *Norwalk,* supra. The plaintiffs in that case claimed that the town planning and zoning commission's approval of the subdivision plan involved was illegal in that it violated § 3.07 of the subdivision regulations which prohibited the creation by new subdivision of blocks which were more than 1200 feet long.[4] In responding to that argument, the Supreme Court stated: "In analyzing § 3.07 of the regulations . . . it is clear that the language clearly and unambiguously indicates the intent that § 3.07 is to be considered only when 'new' land in subdivisions is actually created in 'block' form. It does not require that all newly developed land be divided into 'blocks.' In this regard, the regulation is not subject to modification by construction." (Citations omitted.) *Westport* v. *Norwalk,* supra, 162–63.

"Whether § 3.07 is relevant to the present case depends upon whether a 'block' has been created by the subdivision plan as submitted by [the defendant property owners]. Words used in statutes and regulations 'are to be construed according to their commonly approved usage.' *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886 [1968]. See *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 100, 291 A.2d 721 [1971]; *State* v. *Cataudella,* 159 Conn. 544,

---

[4] The subdivision regulation at issue in *Westport* v. *Norwalk,* 167 Conn. 151, 355 A.2d 25 (1974), provided: "[Norwalk Subdivision Regs., art. III § 3.07 (1968)] BLOCK WIDTH AND LENGTH: Blocks created by new subdivisions shall be at least 200 feet wide and at least 200 [feet] long but not more than 1200 [feet] long."

553, 271 A.2d 99 [1970]; *State* v. *Benson,* 153 Conn. 209, 214, 214 A.2d 903 [1965]. 'Or, stated another way, statutory language is to be given its plain and ordinary meaning. *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362 [1965].' *Klapproth* v. *Turner,* supra, 280. Black, Law Dictionary (3d Ed.) defines 'block' as '[a] square or portion of a city or town inclosed by streets . . . . The platted portion of a city surrounded by streets.' Webster, Third New International Dictionary defines the word, inter alia, as 'a usu. rectangular space (as in a city) enclosed usu. by streets but sometimes by other bounds (as rivers or railroads).' See *Berndt* v. *City of Ottawa,* 179 Kan. 749, 298 P.2d 262 [1956]; *Sports Center, Inc.* v. *City of Wichita,* 176 Kan. 84, 269 P.2d 399 [1954]; *Harrison* v. *People ex rel. Boetter,* 195 Ill. 466, 63 N.E. 191 [1902]; Block, Words & Phrases (Perm. Ed.), pp 781–89, and cases cited therein.

"In the present case, the subdivision map does not depict the subdivision as creating any 'block' as intended by § 3.07 of the regulations in the light of the commonly approved meaning of the word. The tract of land in question is bounded by streets only on three sides—on the east by Cranbury Road, on the north by Partrick Avenue and on the west by Wolfpit Avenue. To the south the tract is bounded by privately-owned property which is not owned or controlled by [the defendant property owners]; nor does Regency Drive, the proposed new street running approximately 2100 feet from Partrick Avenue to Wolfpit Avenue, enclose any of the tract so as to create a block. No block having been created, regulation § 3.07 requiring 'blocks,' only if in fact created, to be a certain minimum width and minimum and maximum length, is irrelevant to the present case and could not, a fortiori, be violated as the plaintiffs contend." *Westport* v. *Norwalk,* supra, 163–64.

The plaintiffs attempt in vain to distinguish *Westport* by pointing out that the Norwalk regulation is devoid of any reference to a stated purpose such as reducing the number of intersections, as is contained in the Trumbull regulations. This distinction is immaterial in face of the Supreme Court's four square definition of "block." The creation of Lynn Place and the resubdivision of the remaining land into two lots did not create a block. *Westport* v. *Norwalk,* supra.

In view of this conclusion we do not consider the defendants' second claimed error concerning the commission's power to waive the block requirements.

The defendants' third and fourth claims of error concern the court's conclusion that the proposed residential use of Lot 2 would violate the yard and frontage requirements of the zoning regulations. The trial court's conclusion and the arguments of the defendants are all based on remarks of the owners' counsel at the hearing before the commission. Those remarks concerned the possible location of a house on the lot.

The requirement of the Trumbull land subdivision regulations that a subdivision plan comply with zoning regulations is mirrored in an even more stringently drawn similar requirement in General Statutes § 8-26. Section 8-26, concerning approval of subdivision and resubdivision plans, provides, in pertinent part, that "nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with *applicable* zoning regulations." (Emphasis added.)

At the time of the trial, any claimed violations of zoning regulations were entirely speculative. Zoning concerns use; *Dooley* v. *Town Planning & Zoning Commission,* 154 Conn. 470, 472–73, 226 A.2d 509 (1967); and until residential use of the lot is attempted it cannot ordinarily be known what yard or frontage

requirements might be violated. This is so under the local regulations. Even more cogently is it so under General Statutes § 8-26 which bars subdivision plans which conflict with *applicable* regulations. Until a building permit application is filed in the future, there are no "applicable" yard and frontage requirements.

These regulatory and statutory requirements must be read to concern zoning violations inherent in the plan itself as submitted and not potential use violations. Such requirements relate to subdivision plans which in and of themselves would violate zoning regulations. Examples of such conflicts include approval of a subdivision plan involving one-half acre lots in a one acre zone, or approval of a plan for a residential subdivision in an industrial area which prohibited such use. Inchoate violations involving the use of the lot in question, which may never occur, form no basis for a conclusion that a conflict exists between the approved subdivision plan and the zoning regulations so as to render the subdivision approval void.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the plaintiffs' appeal.

In this opinion the other judges concurred.

*(See Appendix on next page.)*